Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JESUS DANIEL LERMA-JARAS,

Defendant.

NO. CR20-146JCC

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR REVIEW
OF DETNETION ORDER

## I.    INTRODUCTION

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and C. Andrew Colasurdo and Stephen P. Hobbs, Assistant United States Attorneys for said district, files this response to defendant Jesus Daniel Lerma-Jaras' Motion for Review of Detention Order. Dkt. 37. Lerma-Jaras is currently charged with several drug- and firearm-related crimes in a 12-count Indictment.  Trial is scheduled for July 12, 2021.

The United States does not oppose reopening the detention hearing as Lerma-Jaras stipulated to his detention at his initial appearance pending the gathering of more background information by his attorney.  However, the government does oppose Lerma-Jaras' release because he is a danger to community and poses a significant flight risk.

*United States v. Lerma-Jaras, et al, C20-146JCC*
Government's Response to Defendant's Motion
for Review of Detention Order- 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. BACKGROUND

**A.  Summary of the Investigation and Charges**

### 1.  2018 Seattle Police Investigation

In late 2018, a Seattle Police Department (SPD) confidential source (CS) informed detectives of a Hispanic male, known to him/her as "Primo" and later identified as Lerma-Jaras, who sold large amounts of narcotics.  The CS explained that "Primo" lived in Everett, Washington, drove a newer blue in color Dodge truck, and utilized the cellular phone number 714-650-0582.  Detectives conducted a search of the cellular phone number in law enforcement databases and discovered that the Snohomish Regional Drug and Gang Task Force (SRDGTF) had identified the user to be Lerma-Jaras. During their investigation, an SRDGTF CS purchased narcotics from one of Lerma-Jaras' runners, William Mota (the registered owner of a blue Dodge truck).  During that investigation, SRDGTF detectives were also able to identify another one of Lerma-Jaras' runners, Lionel Gonzalez-Torres, who is a co-defendant in the current case. The SRDGTF detectives provided a photograph of Lerma-Jaras to SPD detectives and the SPD CS identified Lerma-Jaras as "Primo."

In October 2018, the SPD CS called detectives to explain that Lerma-Jaras had called him/her and said that he was coming over to see the CS. Detectives were unable to respond to the CS's location to cover the meet, so detectives advised the CS to call them after Lerma-Jaras left. The CS called back as instructed and advised that he/she just finished meeting with Lerma-Jaras and that Lerma-Jaras said he had several kilograms of heroin with him, but the CS was only shown one kilogram. The CS stated that Lerma-Jaras gave him/her a sample of the heroin and later turned over that sample (1.5 grams of heroin) to detectives.

Several days later, the CS called and advised that Lerma-Jaras had called and texted him/her from different cellular phone numbers (323-994-0290 and 901-573-4120). Several controlled buys and a large seizure of drugs and guns followed, which are summarized in the following chart and described in more detail below.

//

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Date | Event | Heroin | Meth |
|------|-------|--------|------|
| 10/25/18 | Controlled Buy - SPD CS | 29.5 g | -- |
| 11/2/18 | Controlled Buy - SPD CS | 50.1 g | -- |
| 11/6/18 | Controlled Buy - SPD CS | -- | 28.5 g |
| 11/26/18 | Uncontrolled Buy – SPD CS | 257.3 g | |
| 11/27/18 | Arrest and Search | 473.4 g | 2.3 g |

**October 25, 2018 Controlled Buy (Count 2).**  On October 25, 2018, the CS called Lerma-Jaras on 901-573-4120 and ordered an ounce of heroin. Lerma-Jaras said he was having problems with his truck and eventually called the CS to explain that he was sending one of his runners, who would be driving a black Jeep Cherokee. Another male then called the CS and advised he would be right there. Moments later, a male later identified as Gonzales-Torres arrived at the agreed upon meet location in Everett and provided the CS with an ounce of heroin (29.5 grams).

**November 2, 2018 Controlled Buy (Count 3).**  On November 2, 2018, the CS called Lerma-Jaras on 901-573-4120 and left a voicemail.  Shortly thereafter, Lerma-Jaras called back and the CS ordered an ounce of heroin and an ounce of methamphetamine. Lerma-Jaras agreed to meet in Everett. Lerma-Jaras was followed from his residence to the meet location, where a surveillance officer on scene observed Lerma-Jaras approach the CS's vehicle and engage in a discussion prior to removing a package from his pant's pocket and handing to the CS through the open window. Surveillance officers followed Lerma-Jaras back to his house immediately after the deal. The CS turned over the package received from Lerma-Jaras; it contained close to two ounces of heroin (50.1 grams). The CS explained that Lerma-Jaras had given him/her a larger amount of heroin since he (Lerma-Jaras) only had scraps of methamphetamine left, which Lerma-Jaras said were not good for resale. Lerma-Jaras also told the CS that he was getting a shipment of methamphetamine in the next few days and would advise the CS when it arrived.

*United States v. Lerma-Jaras, et al, C20-146JCC*
Government's Response to Defendant's Motion
for Review of Detention Order- 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**November 6, 2018 Controlled Buy (Count 4).**  On November 6, 2018, the CS called Lerma-Jaras on 901-573-4120 and the call went to voicemail. Seconds later, Lerma-Jaras called back and the CS ordered an ounce of methamphetamine. Surveillance officers positioned outside Lerma-Jaras' residence observed him travel to a storage unit. When the CS called to see how much longer Lerma-Jaras was going to be, Lerma-Jaras explained he could not get the methamphetamine because there was construction blocking the door (to the storage unit) and he would need another hour or so. An hour later, Lerma-Jaras returned to the storage facility and accessed Unit A1005, which was rented in his name, and drove directly to the meet location in Everett where detectives observed a hand-to-hand exchange with the CS. The methamphetamine delivered weighed 28.5 grams.

**November 26, 2018 Uncontrolled Buy.**  On November 26, 2018, the CS called detectives to advise that Lerma-Jaras wanted to meet. A detective who happened to be conducting surveillance of Lerma-Jaras, followed Lerma-Jaras from his home in Everett and observed him meet with the CS. Due to the timing, however, the detective was unable to search the CS before the meeting. Once Lerma-Jaras left, the CS turned over a large package of heroin (weighing 257.3 grams) that he/she received from Lerma-Jaras.

**November 27, 2018 Arrest and Seizure (Counts 5 and 6).**  On November 27, 2018, detectives executed a search warrant for Lerma-Jaras' residence (11426 3rd Place West, Unit B, Everett, Washington), blue Dodge truck, white Jeep Cherokee and storage unit. Lerma-Jaras and his 20-year-old son were present during the search.  Investigators recovered the following items: a bag containing roughly a pound of heroin (473.4 grams), a small bag of methamphetamine (2.3 grams) and cocaine (16.0 grams), five firearms, several digital scales, packaging material, a few drug ledgers and couple of wire transfers receipts. Most of these items were recovered from the garage.

**Lerma-Jaras' Statements to Investigators**. SPD Detective Lazarou read Lerma-Jaras his Miranda warnings in English. When asked if he understood those rights, Lerma-Jaras said no. Detective Lazarou then asked Lerma-Jaras if he wanted them in Spanish and Lerma-Jaras said yes. Detective Lazarou then had Lerma-Jaras read the Miranda warnings

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from a Spanish Miranda card. After Lerma-Jaras was done reading, Detective Lazarou asked if he understood and Lerma-Jaras said yes. Detectives then gave Lerma-Jaras a copy of the search warrant, and explained that a Superior Court King County Judge had authorized law enforcement to search his residence, vehicle and storage unit. Lerma-Jaras looked over the warrant and said he understood.  When asked where the keys to his vehicle and storage unit were, Lerma-Jaras pointed out where the keys were for the vehicle and storage unit. Throughout the contact, Lerma-Jaras spoke English and communicated with Detectives Lazarou and Wantland without issues.

Lerma-Jaras was then asked about the location of the narcotics, guns and money within his residence, vehicles and storage unit. Lerma-Jaras was not truthful and when asked specific questions he would not give a direct answer. Lerma-Jaras then told the detectives that he should speak with an attorney. Detective Lazarou explained to Lerma-Jaras that since he asked for an attorney they had to stop asking him any further questions. A few seconds later, Lerma-Jaras began speaking to the detectives. The detectives had not asked Lerma-Jaras any questions; his comments were unsolicited. At that point, Detective Wantland asked Lerma-Jaras if he wanted to continue speaking with them and Lerma-Jaras stated yes. Detective Lazarou then instructed Lerma-Jaras to re-read his Miranda rights from the Spanish Miranda card. Once finished, Lerma-Jaras stated he understood and wanted to speak to them.

Lerma-Jaras was then asked about where the narcotics were located inside his residence. Lerma-Jaras said the only narcotics detectives would locate would be in the garage and nodded to their location. Detective Wantland then located a large zip lock bag on the floor of the garage, which had a large amount of suspected heroin inside. Lerma-Jaras stated the contents inside the large zip lock bag were heroin. While speaking with Lerma-Jaras, detectives were notified that several handguns were located, one of which was located inside an eave just outside of the front door of the residence. The handgun was tightly wrapped in saran-wrap. Also, located inside the eave were two large digital scales and two magazines for the handgun. They were also saran-wrapped. Lerma-Jaras was

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  asked how many guns were inside the residence. Lerma-Jaras said he had about six guns

2  inside his residence and stated that he kept one in the nightstand next to his bed. Detectives

3  asked Lerma-Jaras if he took the guns in trade for narcotics.  Lerma-Jaras said he did and

4  explained that he has a fascination for guns. When asked if any of the guns were stolen,

5  Lerma-Jaras said he was positive all the guns were stolen since he got them from the streets

6  and drug users. Lerma-Jaras was asked why one of the guns was wrapped in saran wrap

7  and he explained that he sometimes gives guns to his narcotic's supplier and that they get

8  taken down to California and possibly further south. Lerma-Jaras also stated that he put the

9  gun in the eave. Lerma-Jaras then went on the say that he has been in the country for 20

10 years and has been selling narcotics for his supplier since April or May of this year (2018).

11 A records check revealed that three of the five recovered firearms had been reported stolen.

12         2.      **2019 OPNET Investigation**

13         An individual arrested by the Olympic Peninsula Narcotic Enforcement Team

14 ("OPNET") detectives (hereinafter "OPNET CS") explained that he/she purchased 6 to 20

15 ounces of heroin and methamphetamine from a young Hispanic male named "Lionel" who

16 used phone number 360-707-8026 and was later identified as Lerma-Jaras' runner

17 Gonzalez-Torres. The OPNET CS explained to investigators that he/she had been

18 purchasing narcotics from Lionel for about six months and described the transactions in

19 detail. The OPNET CS explained he/she would contact Lionel, place the order and take the

20 ferry from Kingston, Washington to Edmonds, Washington to meet Lionel on the Edmonds

21 side. The OPNET CS would try to make the meet quick so he/she could return to Kingston

22 on the same ferry.

23         OPNET learned that the user of 360-707-8026 had been identified by SRDGTF as

24 Gonzales-Torres. As a result, the OPNET CS was shown a photograph of Gonzales-Torres

25 and he/she identified Gonzales-Torres as the person he/she knew as "Lionel." Several

26 controlled buys followed, which led to the arrest of Gonzales-Torres and a large seizure of

27 drugs from him and his residence. These controlled purchases, and Lerma-Jaras' suspected

28

Government's Response to Defendant's Motion
for Review of Detention Order- 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

involvement in Gonzalez-Torres drug trafficking activities, are summarized in the following chart and described in more detail below:

| Date | Event | Heroin | Meth |
|------|-------|--------|------|
| 5/29/19 | **Controlled Buy - OPNET CS** | **124.7 g** | **58.2 g** |
| 6/12/19 | **Controlled Buy - OPNET CS** | **101.2 g** | **28.9 g** |
| **6/20/19** | **Order Up / Arrest** | **405.1 g** | **33.9 g** |
| | **Search of Home** | **51.5 g** | **1,476.2 g** |

**May 29, 2019 Controlled Buy (Count 7).** On May 28, 2019, the OPNET CS contacted Gonzales-Torres using cell number 360-707-8026 and placed an order for 4.5 ounces of heroin and 2 ounces of methamphetamine. The following day, after traveling on the ferry from Kingston to Edmonds, the CS waited for Gonzales-Torres, who sent the CS a text to inform him/her that he would be arriving in a gold Chevy Malibu. Gonzales-Torres also called the CS in an effort to locate him/her. The body wire worn by the CS captured this call and their subsequent meeting.

About this time, a surveillance officer observed a gold Malibu arrive (registered to Gonzales-Torres). Detectives identified Gonzales-Torres as the driver. The CS entered the passenger side of the Malibu and Gonzales-Torres then drove a short distance and parked along the side of the road. Investigators on the ground and in the air maintained visual contact with the Malibu. During this time, no one approached or contacted the Malibu besides the CS. After several minutes, the Malibu returned to the parking lot and dropped the CS off. Once back in Kingston, the CS turned over the heroin (124.7 grams) and methamphetamine (58.2 grams) to detectives. The CS remained in view of the surveillance officers at all times.

**June 12, 2019 Controlled Buy (Count 8).** On June 11, 2019, the OPNET CS contacted Gonzales-Torres using a new cell number 360-853-6044 and placed an order for heroin and methamphetamine. The order was made via a text message.

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On June 12, 2019, while on the ferry in route to the deal, the CS received a text message from Gonzales-Torres, who advised the CS that he was waiting in the parking lot in a black Mazda sedan. Surveillance officers observed Gonzales-Torres inside a black 2018 Mazda 6 sedan. Upon arriving in Edmonds, the CS entered the Mazda and Gonzales-Torres was overheard telling the CS (who was wearing a body wire), "It's a little stronger than before. It's good." They then confirmed the price, the exchange was made and the CS emerged from the Mazda. The CS turned over the purchased heroin (101.2 grams) and methamphetamine (28.9 gram) to investigators while in Edmonds.

Air support maintained surveillance on Gonzales-Torres, who eventually returned the Mazda to a rental car company and got into a 2005 Jeep Wrangler registered to Lerma-Jaras. Investigators then drove to Lerma-Jaras' residence (11426 3rd Place W, Unit B, Everett, Washington) and observed Gonzales-Torres' gold Malibu parked outside. Air support observed the two men in the Jeep go to a storage facility and retrieve a bag from one of the units before arriving back at Lerma-Jaras' residence.

**June 20, 2019 Arrest and Seizure (Count 9).** On June 20, 2019, investigators utilized the OPNET CS to order a pound of heroin and an ounce methamphetamine from Gonzales-Torres, who was arrested in Everett, on his way to the meet the CS. Upon being removed from his car, Gonzales-Torres was patted down for weapons and the officer recovered a bag of heroin (405.1 grams) and methamphetamine (33.9 grams) from his pants' pocket. The package of drugs was wrapped in dryer sheets.

Gonzales-Torres subsequently consented to a search of his Jeep and signed a written consent to search form**.** Investigators recovered three phones from the car and one from Gonzales-Torres himself. When asked where he was taking the drugs, he said someone had dropped them off and he was taking them to someone in Seattle.

Gonzales-Torres consented to a search of his Burlington apartment and told investigators they would find around three pounds of methamphetamine, a small amount of heroin and roughly $6,000 in his room. When investigators could not locate the three pounds of methamphetamine, Gonzales-Torres showed them where it was. Ultimately,

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigators recovered two large packages of methamphetamine from a backpack (1,392.2 grams), a small package of cocaine on the windowsill (33.9 grams) and a small package of heroin under the mattress (43.1) grams.

Investigators also noticed that the bathroom was a makeshift packaging station with baggies, gloves, scales and residue everywhere. Three additional baggies of cocaine (4.1 grams, 1.3 grams and 1.1 grams), one additional bag of methamphetamine (84.0 grams) and one additional bag of heroin (8.4 grams), and $7,540 were recovered from the bathroom.

### 3.   2019-2020 SPD Investigation

In July 2019, the SPD CS received a call from an individual known to him/her as "Isiad", who offered to introduce the CS to a local dealer. Ultimately, as summarized in the following chart and described in more detail below, the CS eventually reached out to the local dealer, who investigators believe to be Lerma-Jaras, and arranged to make the following two controlled buys. On both occasions, Gonzales-Torres arrived to deliver the drugs to the CS.

| Date | Event | Heroin | Meth |
|---|---|---|---|
| 7/31/19 | Controlled Buy - SPD CS1 | 25.6 g | 29.4 g |
| 2/13/20 | Controlled Buy - SPD CS1 | 128.4 g | -- |

**July 31, 2019 Controlled Buy (Count 10).**  In late July, 2019, the SPD CS received a telephone call from "Isiad", who asked if the CS was still working (engaged in drug trafficking). At the direction of investigators, the CS said he/she was. Isiad then told the CS that he would provide the CS with a local contact for drugs and later provided the phone number 425-948-8033. On July 26, 2019, the CS engaged in the following exchange of text messages with the user of 425-948-8033, who is believed to be Lerma-Jaras [1]:

---

[1] On August 6, 2019, after the controlled buy being discussed, investigators obtained authorization to track this phone and the location information received consistently put the phone at Lerma-

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| CS: | Hi, Isaid gave me your number but he didn't give me your name, is there away we can meet on Monday to get a sample [of narcotics]? | |
| LJ: | What's up friend, the crazy guy talked to me, it's okay you just tell me the time and the weather and let me know if the road is cold frozen [methamphetamine] or if you prefer to drive pure asphalt [heroin]. | |
| CS: | Hi, I don't know what your name I'm going out until Monday. I wanted to get a sample of a piece of night [heroin] and one of day [methamphetamine] to see how the merchandise is. | |
| LJ: | My name is ray friend. | |
| LJ: | But when do you want the pictures? | |
| LJ: | See you Monday.??? | |
| LJ: | They will not have any complaints and if I did not like it, I would not be paid by the company. | |
| CS: | Monday is when I return to Seattle | |
| LJ: | Does that mean you want them right now? | |
| CS: | I do not return until Monday but what are your prices at night [heroin] per piece [ounce] and how much for the day [methamphetamine]per pound | |
| LJ: | Sorry I was having dinner with my boss. | |
| LJ: | Look friend it depends how many you grab [price depends on how much of the narcotics are purchased] but I'll recommend you. And the crazy one knows that I don't like any complaint about my pull? He doesn't like anyone complaining about his work ethic or influence. If you take one [ounce of heroin], I'll give it to you for 800 [$800] or 2 [2 ounces of heroin] for 750 [$750 for each ounce] but if I recommend 800 then you should give it [sell it] for 1000 [$1,000 per ounce] because my work is 100% clean [100% pure heroin]. And you will review it. | |

---

Jaras' residence located 11426 3rd Place West, Unit B, in Everett, Washington – the same residence that had been searched on November 27, 2018. In addition, on August 16, 2019, about two weeks after the controlled buy, investigators were able to put the phone in Lerma-Jaras' hands after the location information led them to a construction site where Lerma-Jaras was working. Once located, investigators followed Lerma-Jaras to a few other locations. His movements were consistent with the phone's location data.

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | LJ: | I understand that you've been doing this a while so you would know well what is at 100 [high purity drugs] and what isn't. |

| | LJ: | And if they're given at 800 [$800 per ounce] fix them [cut the drugs with another substance] because people now want quality they pay cheap so they cut it and give them it very expensive and no one wants to get fucked. |

| | LJ: | The water [methamphetamine] was left at 27 old [$2,700 per pound]. |

| | LJ: | Also that guaranteed [the quality of the methamphetamine is guaranteed, so the drugs can be returned if they are poor quality]. |

On July 31, 2019, the CS exchanged the following series of text messages with Lerma-Jaras, during which the CS asked for a "piece of brown and a water."

| | CS: | Ray, my plan is to see you at 4, Northgate mall is that fine with you? |

| | LJ: | How about around 6 please, buddy? |

| | LJ: | Around 4 I'm heading to pick up my mom at work. |

| | CS: | Ok Ray see you at 6, I need a piece of brown and a water (an ounce of heroin and methamphetamine], if everything goes well, in a couple days I'll buy much more from you, OK? |

| | LJ: | Ok, how do you like [it] friend, the dark powder or rocks/stone? |

| | CS: | Rocks/stone |

| | LJ: | Ok, because a lot of customers ask in powder and others in stone, but everything is 100 [percent] clean [you're] not going to have complaints. |

| | LJ: | Sounds good, in case you like it don't hesitate asking because I wouldn't want to tell you it's all gone or wait for a few days to arrive. |

| | CS: | Ok, we both agreed for 2 at 6, right? |

| | LJ: | Yes |

| | CS: | KeyBank in [the] parking lot I'm in the black 4 door Ford truck, [in] 10 minutes. |

| | LJ: | Ok, I'm on my way buddy, I'm going to give you another number. |

*United States v. Lerma-Jaras, et al, C20-146JCC*
Government's Response to Defendant's Motion
for Review of Detention Order- 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Later, the CS received a phone call from 360-630-1791, believed to be used by Gonzales-
2   Torres, to coordinate the meeting.

3   Investigators gave the CS the buy money and equipped the CS with an audio/video
4   recording device. Investigators then followed the CS to the meet location: the parking lot
5   at Key Bank located at 353 NE Northgate Way, Seattle, Washington. At 6:20 p.m., an
6   investigator observed Gonzales-Torres arrive in his gold 2001 Chevy Malibu. After
7   parking near the CS, Gonzales-Torres got out of his car and entered the CS's truck. The
8   CS and Gonzales-Torres then drove through the Northgate Mall parking lot and were
9   followed by investigators.

10   After a few minutes, they returned to the Key Bank parking lot and parted ways.
11   The CS turned over the methamphetamine (29.4 grams) and heroin (25.6 grams) to
12   investigators. The CS told investigators that he recognized Gonzales-Torres from the
13   earlier 2018 investigation, but it appeared he had put on weight. Other investigators
14   followed Gonzales-Torres back to Lerma-Jaras' Everett residence after the deal.

15   **February 13, 2020 Controlled Buy (Count 11).**  At the end of January 2019, the
16   CS reached back out to "Isiad" in an effort to obtain Lerma-Jaras' new phone number (the
17   CS explained to Isiad that he/she had been calling that guy to pick up merchandise, but he
18   was not picking up). Isiad said he would pass the CS's number along to him (believed to
19   be Lerma-Jaras). After a few more conversations, during which the CS and Isiad discussed
20   prices and quantities, CS1 began receiving text messages from 206-586-3621, who
21   investigators again believe was Lerma-Jaras:

22   LJ:     Buddy, how are you? "Say" [Isaid] told me that you might need
23           something.

24   LJ:     Another guy would see you because that one didn't have to give you the
25           paint [narcotics] at 300 and he was told at 200.

26   LJ:     Let me know what you are going to need and another guy would bring it
27           to you.

28   CS:     Okay, Who are you and who gave you this number?

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

LJ:     Say. [Isiad]

LJ:     Let me know if you are going to need something. My name is Cesar.

LJ:     I sent the same guy that gave you the things last time [believed to be a
        reference to Gonzales-Torres]. It is just that there have been several times
        that he takes upon himself to charge more. I need help from my clients,
        not for them to leave my friend.

Following that exchange, the CS placed two calls to 206-586-3621; both were not answered. After the second attempted call, the CS received an incoming telephone call from 360-630-1791, the number previously used by Gonzales-Torres. When the CS did not answer the call, the CS received the following two text messages from 360-630-1791: "My friend told me to call you. He is on a call and couldn't answer you." And "What are you in need for?"

After receiving those text messages, the user of 206-586-3621 and the CS spoke on the phone.  The CS believed the user of 206-586-3621 was Lerma-Jaras, from the earlier investigation in 2018, but could not be sure. In summary, the pair discussed prices of narcotics and how future transactions would occur. During the call, the user of 206-586-3621 stated another individual would be in contact to complete the narcotics transactions. The CS asked what his name was. The user of 206-586-3621 stated the other individual was "Ricardo". The CS asked if he/she should make future arrangements with "Ricardo" and the user of 206-586-3621 said yes. CS1 asked 206-586-3621 if he/she should call 206-586-3621 with any other types of concerns. 206-586-3621 said yes and the conversation continued about the user of 206-586-3621 being responsible for supervising quality. That same day, approximately 20 minutes later CS1 received a call from 360-630-1791 and the user (Gonzales-Torres) identified himself as "Ricardo."

After a failed attempt at a controlled buy on February 1, 2019, investigators successfully utilized the CS to purchase a quarter-pound of heroin from Gonzales-Torres on February 13, 2020. The arrangements for the deal were made with "Ricardo" (Gonzales-Torres) over 360-630-1791. Once the arrangements were made, investigators provided the

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  CS with the buy money and followed him/her to the agreed upon meet location (a QFC
2  parking lot at 1531 NE 145th Street, Seattle). Once there, an investigator observed
3  Gonzales-Torres waiting in the QFC parking lot inside his gold Malibu. Once the CS
4  arrived, Gonzales-Torres got out of his car and accessed both the engine compartment and
5  passenger compartment and was observed holding items in his hands. While that was going
6  on, the CS got into the driver's seat of the Malibu before returning to his/her own vehicle
7  and leaving.

8      The CS then met with investigators and turned over a package of heroin (128.4
9  grams), which the CS explained Gonzales-Torres instructed him/her to retrieve from under
10 the driver's seat.

11     **4.      September 1, 2020 Arrest of Lerma-Jaras and Gonzales-Torres**

12     Investigators arrested both Lerma-Jaras and Gonzales-Torres on September 1, 2020.
13 During the search of Lerma-Jaras' residence, investigators recovered four firearms, parts
14 of a fifth, and a variety of ammunition. The firearms were located in various parts of the
15 home and two of them were saran-wrapped, similar to the firearm found in the eave of his
16 home during the November 27, 2018 search. It does not appear that any of the firearms
17 were reported stolen. No drugs were recovered from Lerma-Jaras' residence.

18     Conversely, investigators found a large amount of heroin during the search of
19 Gonzales-Torres' vehicle and residence. More specifically, over one kilogram of heroin
20 was recovered from his gold Malibu – the same Malibu he drove to several of the controlled
21 buys – and close to another kilogram of heroin was recovered from various locations within
22 his home. Investigators also found pills suspected to contain fentanyl in the residence.

23 **B.   Procedural History**

24     As described above, investigators arrested both men on September 1, 2020, and a
25 complaint was filed charging Lerma-Jaras and Gonzales-Torres with a series of drug- and
26 firearm-related offenses. Dkt. 1. Both men made their initial appearance that day, and
27 Lerma-Jaras stipulated to his detention and an order of detention was entered.  Dkts. 6 and
28 7.  On September 9, 2020, a grand jury returned a 12-count Indictment, which mirrored the

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  11 counts in the original Complaint and added a 12th count for the drugs recovered from

2  Gonzalez-Torres' Malibu and residence on September 1, 2020. Dkt. 21. The trial in this

3  matter was recently continued to July 12, 2021, by agreement of the parties. Dkt. 38. On

4  October 28, 2020, Lerma-Jaras filed his motion to review the detention order. Dkt. 37.

5     For the reasons set forth below, the United States respectfully asks this Court to

6  deny Lerma-Jaras' motion and uphold the prior order of detention.

7                                **III.    ARGUMENT**

8     Lerma-Jaras has been charged with seven serious drug distribution offenses, one of

9  which carries a 10-year mandatory minimum and a possible maximum sentence of life and

10 four others that carry a mandatory minimum of five years and possible maximum of 40

11 years.  A defendant charged with such offenses must be ordered detained pending trial if

12 "the judicial officer finds that no condition or combination of conditions will reasonably

13 assure the appearance of the person as required and the safety of any other person and the

14 community." 18 U.S.C. §3142(e)(1).

15    In addition, since Lerma-Jaras is charged with seven drug offenses that all carry a

16 maximum sentence of ten years or more, there is a presumption of detention. 18 U.S.C.

17 §3142(e).  "Although the presumption shifts a burden of production to the defendant, the

18 burden of persuasion remains with the government."  *United States v. Hir*, 517 F.3d 1081,

19 1086 (9th Cir. 2008).  Danger to the community must be demonstrated by clear and

20 convincing evidence, *see United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991),

21 while risk of flight may be established by a preponderance of the evidence.  *See United*

22 *States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019)  If the defendant proffers

23 evidence to rebut the presumption of dangerousness, the Court then considers   the

24 following factors:  (1) the "nature and circumstances of the offense charged," (2) the

25 "weight of the evidence against" the defendant, (3) the "history and characteristics" of the

26 defendant, including his "character, physical and mental condition, family ties,

27 employment, financial resources, length of residence in the community, community ties,

28 past conduct, history relating to drug or alcohol abuse, criminal history, and record

*United States v. Lerma-Jaras, et al, C20-146JCC*
Government's Response to Defendant's Motion
for Review of Detention Order- 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

concerning appearance at court proceedings," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g).

In this case, there is a presumption in favor of detention and Lerma-Jaras cannot meet the burden of producing evidence that he does not pose a danger to the community or risk of flight in order to rebut the presumption.

First, the nature and circumstances of the charges against Lerma-Jaras are obviously serious and directly involve the illegal distribution of narcotics. His offense conduct also includes the repeated possession, illegal possession, of firearms.  Moreover, there is also evidence – from his statements to investigators in 2018 and the presence of saran-wrapped guns in his home in both 2018 and 2020 – that Lerma-Jaras has trafficked, and is continuing to traffic, these dangerous firearms to others, again in violation of the law.

Second, as summarized above, the weight of the evidence against Lerma-Jaras is incredibly strong. Although this is the least important factor, it weighs one-hundred percent in favor of detention.

Third, Lerma-Jaras's history and characteristics are obviously concerning. Lerma-Jaras is citizen of Mexico and appears to have illegally entered the United States roughly 20 years ago.  As a result, an immigration detainer has been lodged against him.  While he has familial ties to this area, he also has strong family ties to both California and Mexico. Based on the serious consequences he faces, and likelihood that he will be deported upon completing a sentence in this case, there is little reason for Lerma-Jaras to remain in the area to face these charges.  That is especially true considering that Lerma-Jaras reported having no assets in the United States.

Fourth, and most importantly, Lerma-Jaras' prior conduct demonstrates that he poses an ongoing risk to the community.  His willingness to engage in the distribution of narcotics and, in particular, his decision to continue to engage in that behavior even after his arrest in 2018 is extremely concerning.  The same is true for his for his decision to

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   maintain an arsenal of dangerous firearms.  These dangers cannot be eliminated, or readily

2   controlled, by any combination of release conditions.

3                              **IV.   CONCLUSION**

4          For the reasons set forth above, the government respectfully requests that Lerma-

5   Jaras be detained.  He is facing serious charges that carry a significant mandatory minimum

6   term of imprisonment.  His continued involvement in drug trafficking and his insistence on

7   arming himself with dangerous firearms, render him a danger to the community if released.

8   Furthermore, he is not in this country legally and there is a strong incentive for him to flee

9   to avoid conviction and eventual deportation.  Given the presumption of detention, an

10  appearance bond in this case is not appropriate.

11         DATED this 5th day of November, 2020.

12

13                                      Respectfully submitted,

14                                      BRIAN T. MORAN
                                        United States Attorney
15

16                                      */s/ C. Andrew Colasurdo*
17                                      C. ANDREW COLASURDO
                                        Assistant United States Attorney
18                                      700 Stewart Street, Suite 5220
19                                      Seattle, Washington  98101
                                        Phone: 206-553-4075
20                                      E-mail: andy.colasurdo@usdoj.gov
21

22

23

24

25

26

27

28

*United States v. Lerma-Jaras, et al, C20-146*JCC
Government's Response to Defendant's Motion
for Review of Detention Order- 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970